PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

WRITER'S DIRECT DIAL NUMBER

(212) 373-3215

WRITER'S DIRECT FACSIMILE

(212) 492-0215

WRITER'S DIRECT E-MAIL ADDRESS

lclayton@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

November 18, 2022

**BY EMAIL AND ECF**

Honorable David S. Jones
United States Bankruptcy Court
Southern District of New York
One Bowling Green, New York, NY 10004-1408

Re:    *AIMCO CLO 10, Ltd. v. Revlon, Inc., et al.*, Adv. Proc. 22-1167
       (the "Adversary Proceeding")

Dear Judge Jones:

We are counsel and special litigation counsel to the Debtors. We write in response to the letter from plaintiffs in the Adversary Proceeding asking the Court to schedule a trial that would not commence until October 31, 2023, and in anticipation of the scheduling conference to be held on November 21, 2022. Debtors ask that trial be scheduled no later than early March 2023. Plaintiffs' request for an October 2023 trial contradicts their previous commitments to the Court, is fundamentally inconsistent with case milestones in the Final DIP Order to which plaintiffs agreed, would impose massive additional costs on the Debtors, and would effectively freeze the plan confirmation process and prevent a timely reorganization.

Plaintiffs' counsel told the Court on the first day of this case that the claims they now assert must be resolved "*as soon as possible*" because it will help determine "*what is the right allocation among creditors, what are credit recoveries, quite frankly, what this plan of reorganization should look like*." First Day Hr'g Tr. 41:5-9. *See also* Cplt. ¶ 24 (approvingly quoting statement by Debtors' counsel that "if this is going to be a dispute, it should be raised and addressed immediately"). Plaintiffs also consented to the Final DIP Order, which requires entry of a confirmation order by April 1, 2023. Term DIP Credit Agreement § 6.17, Ex. 1 to Interim DIP Order [ECF No. 70]. Accordingly, Debtors have sought to negotiate a schedule that allows for trial immediately before confirmation and within the April 1, 2023, milestone. Despite having consented to those milestones, Plaintiffs demand a trial beginning seven months *after* the plan confirmation deadline and four months after the stated maturity of the DIP loans—a schedule that would likely cost the Debtors at least $140 million in incremental professional fees and months of unnecessary delay before emergence. Plaintiffs' letter ignores their statements to the Court and their own agreement to the case milestones in the Final DIP Order. Their strategy of consenting to the DIP milestones upfront, and then waiting until the last day of the challenge period to commence the Adversary Proceeding—asserting claims that they previously asserted in 2020 and highlighted to the Court in June—and demanding a year of litigation before trial is a transparent attempt to

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

bypass the Final DIP Order and gain leverage over the Debtors and other stakeholders by halting current negotiations over a chapter 11 plan while imposing enormous costs on the Debtors' estates. The Debtors seek to file a plan with the greatest consensus possible and are *currently* negotiating a plan premised on an agreement in principle among the Debtors, the UCC, and the BrandCo Lenders. *See* Form 8-K of Revlon Inc. dated November 14, 2022. Plaintiffs' proposed schedule, if adopted, would table any meaningful plan negotiations for at least six months.

Plaintiffs hold debt issued under a 2016 Credit Agreement by Debtor Revlon Consumer Products Corporation. Beginning in early April 2020, certain plaintiffs opposed and tried to block a financing transaction (the "BrandCo transaction") that gave the Company vital liquidity during the first phases of the COVID-19 pandemic. Plaintiffs' complaints about the BrandCo transaction were and are solely tactical. In February 2020, those same plaintiffs, together with others, proposed to the Company a financing transaction that closely resembled the eventual BrandCo transaction and contained all of the features to which they now object. And, while the plaintiffs claimed in April 2020 that an unrelated 2019 financing transaction purportedly breached the 2016 Credit Agreement, Compl. ¶¶ 228-245, neither they nor anyone had previously objected to that transaction or claimed that it breached the agreement. The record revealed in already-completed document discovery and depositions demonstrates that plaintiffs' about-face arose from a cynical decision that they stood to gain more if they could choke off the Debtors' liquidity, injure other stakeholders, and force the Company into a premature bankruptcy at the height of the COVID-19 pandemic in April 2020.

In August 2020, certain plaintiffs filed an extremely detailed 117-page complaint challenging the BrandCo transaction. *See UMB Bank, N.A. v. Revlon, Inc.*, No. 20 Civ. 6352, Dkt. 1 (S.D.N.Y. Aug. 12, 2020) (the "UMB Complaint"). That complaint challenged the exact same transactions and asserted many of the same claims in—and in some cases is copied word for word by—the current 106-page complaint. Indeed, many of the plaintiffs incorporated the UMB Complaint by reference in proofs of claim. *See, e.g.*, Proof of Claim No. 1507 filed by Brigade Capital Management, LP. Yet—contrary to their self-serving claim that they have "expeditiously . . . moved this case forward," Ltr. at 1—plaintiffs waited until October 31, 2022—the very end of the challenge period—to file the present, substantially identical complaint.

The Debtors have worked diligently to negotiate a workable schedule. We proposed a schedule that allows for trial to start on March 6, 2023. *See* Appendix A. As we explained, that schedule is necessary because of the DIP milestones and the huge cost and disruption imposed by delaying these proceedings. The Debtors' schedule is also reasonable given the extensive discovery that has already been completed and plaintiffs' extensive knowledge of the relevant facts and legal issues, as demonstrated in the 2020 UMB Complaint and their current Complaint.

Plaintiffs, however, have repeatedly refused to discuss a March 6 trial. Plaintiffs do not dispute that their claims should be resolved before a plan is confirmed. Contrary to plaintiffs' suggestion, the Debtors have no power to alter the case milestones without the DIP lenders' consent—deadlines plaintiffs *agreed to* when this Court approved the Final DIP Order and on which the parties have relied—and plaintiffs' proposed schedule thus creates the risk of a default under the DIP loans. Plaintiffs' position also ignores the tremendous stakes of this case for the Debtors' reorganization, the cost of extending these bankruptcy proceedings and additional months of litigation, and the extensive discovery that has already taken place. Based upon post-petition professional fees through September 30, 2022 (more than $60 million), a seven-month delay in

emergence would cost the estates no less than $140 million, although the unreasonable, scorched-earth litigation Plaintiffs propose would almost certainly dramatically increase that cost. And it is clear that Plaintiffs also are trying to obstruct the Debtors' ability to negotiate a chapter 11 plan. The Debtors' chapter 11 plan will likely require significant financing commitments to repay the DIP Financing and fund the Debtors' exit from chapter 11, but obtaining those financing commitments will be significantly harder and more costly if the Debtors must seek commitments that lock-up lenders through October 2023.

Plaintiffs make the baseless claim that their drawn-out schedule is necessary because extensive discovery is needed. Plaintiffs ignore that—for nearly four months—the Debtors and other stakeholders, such as the UCC, pursued and provided extensive discovery about the BrandCo transaction under Fed. R. Bankr. P. 2004, and that such material is fully available to plaintiffs. The Debtors alone produced over 330,000 pages of documents, and six 30(b)(6) witnesses were deposed. Rather than participate in this discovery, plaintiffs—well aware of the case milestones set forth in the Final DIP Order—boycotted the process. They did not serve any discovery requests; did not attend *any* of the depositions conducted by the UCC; and claimed when asked that they were not aware that other key parties had already made significant document productions. Their Complaint fails to cite a *single* piece of evidence from the parties' extensive Rule 2004 discovery process. And, far from "expeditiously" advancing the case, as they now claim, when the Debtors served Rule 2004 document requests on certain of the plaintiffs in September 2022, they dragged their feet for weeks and then claimed that the pendency of this action precluded Rule 2004 discovery before grudgingly agreeing to produce documents by November 30. While plaintiffs contend that "dozens" more depositions are needed because of the number of entities involved in the BrandCo transaction, that claim is not correct. As plaintiffs well know, both the BrandCo lenders and the Debtors acted as groups with shared professional representatives, many of whom have already been deposed. Deposing dozens more witnesses would not be reasonable or proportional to the needs of this case. Plaintiffs misleadingly assert that the UCC's discovery examined only "potential fraudulent transfer claims." Ltr. at 3. But their discovery involved all aspects of the transactions at issue, and plaintiffs' claims here seek substantially similar relief. And completion of substantial Rule 2004 productions from the largest holders in the plaintiff group has been promised by November 30—11 months before the trial date they demand.

Courts do not hesitate to set expedited schedules when speedy resolution is warranted. The court in the TPC Group bankruptcy earlier this year directed the parties to brief summary judgment motions and hold a hearing within a month after the adversary complaint was filed. *See Bayside Capital, Inc.* v. *TPC Group Inc.*, Adv. Pro. No. 22-50372 (CTG), ECF No. 22 (Bankr. D. Del. June 9, 2022). In the Intelsat chapter 11 case, which involved nine-figure adversary claims, the court-ordered schedule (after one extension) included a trial only three months after the order was entered. *In re Intelsat, S.A.*, No. 20-32299, Dkt. 3289 (Bankr. E.D. Va. Nov. 2, 2021). Similarly, in the lawsuit over Elon Musk's purchase of Twitter, the Delaware Court of Chancery set trial only three months after filing of the complaint. *See* Order Governing Case Schedule in *Twitter, Inc.* v. *Musk*, C.A. No. 2022-0613-KSJM (Del. Ch. July 28, 2022); *see also Akorn, Inc.* v. *Fresenius Kabi AG*, No. 2018-0300-JTL, 2018 WL 4719347 at *39 (Del. Ch. Oct. 1, 2018). Time is of the essence in this case just as much as it was in those cases; a fact the plaintiffs understood when they consented to the DIP Milestones. We respectfully submit that the Court should reject plaintiffs' attempt to derail the confirmation process to which they agreed, and direct the parties to jointly propose a schedule consistent with confirming a plan on or before April 1, 2023, including a trial date no later than early March.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

4

Respectfully submitted,

*/s/*Lewis R. Clayton
Lewis R. Clayton
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
lclayton@paulweiss.com

*/s/*Steven F. Molo
Steven F. Molo
MoloLamken LLP
430 Park Avenue
New York, NY 10022
smolo@mololamken.com

/s/ Howard J. Kaplan
Howard J. Kaplan
Kaplan Rice LLP
142 West 57th Street
Suite 4A
New York, NY 10019
hkaplan@kaplanrice.com

*Counsel and Special Litigation Counsel for the Debtors and Debtors in Possession*

Cc: All parties registered for ECF

## APPENDIX A: PROPOSED SCHEDULES

Debtors' Proposed Schedule

| Event | Deadline |
|---|---|
| Service of initial Rule 34 requests and non-contention interrogatories | November 14, 2022 |
| Answer or MTD (if any) | December 5, 2022 |
| Answer to counterclaims and response to MTD, if any | December 19, 2022 |
| Reply in support of MTD | January 6, 2023 |
| Close of fact discovery | January 20, 2023 |
| Expert reports | January 27, 2023 |
| Rebuttal expert reports | February 6, 2023 |
| Close of expert discovery | February 17, 2023 |
| Pretrial briefs and proposed PTO | February 27, 2023 |
| Trial | March 6, 2023 |

Objecting Lenders' Proposed Schedule

| Event | Deadline |
|---|---|
| Service of first RFPs/non-contention interrogatories | November 14, 2022 |
| Response to complaint | December 1, 2022 |
| Substantial completion of production | March 3, 2023 |
| Close of fact discovery | May 12, 2023 |
| Initial expert reports | June 2, 2023 |
| Rebuttal expert reports | June 23, 2023 |
| Close of expert discovery | July 14, 2023 |
| File motions for summary judgment | August 11, 2023 |
| Trial | October 31, 2023 |